IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEVEN M. GILES and MAYER FRIEDMAN,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 3:11-0330

ICG, INC., f/k/a INTERNATIONAL COAL
GROUP, INC., WILBUR L. ROSS, JR.,
BENNETT K. HATFIELD, WENDY L.
TERAMOTO, MAURICE E. CARINO, JR.,
STANLEY N. GAINES, SAMUEL A. MITCHELL,
CYNTHIA B. BEZIK, WILLIAM J.
CATACOSINOS, ARCH COAL, INC., and
ATLAS ACQUISITION CORP.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This is a shareholder challenge to a two-step acquisition in which a third-party corporation has agreed to commence a tender offer for a majority of the target corporation's stock, followed by a back-end merger into a subsidiary of the acquirer. Pending are various motions filed by the parties. For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part the defendants' Motion to Proceed in One Jurisdiction, Dismiss or Stay Litigation in the Other Jurisdiction, and Organize Counsel for the Putative Class. [Doc. 5]

Further, the Court **DENIES** as moot and **WITHOUT PREJUDICE** the plaintiffs' Motion for Expedited Proceedings and Discovery [Doc. 10] and the plaintiffs' Motion for Expedited

Hearing [Doc. 13]. Also consistent with the reasoning of this Opinion, the Court **HOLDS IN ABEYANCE** the plaintiffs' Motion for a Preliminary Injunction. [Doc. 9]

I.     **Background and Procedural History**

This is a putative shareholder derivative class action brought on behalf of the stockholders of International Coal Group, Inc. ("ICG" or the "Company") to enjoin a proposed tender offer and merger transaction between ICG and Atlas Acquisition Corp. ("Atlas"), a wholly-owned subsidiary of Arch Coal, Inc. ("Arch"). The Court discusses the material facts as detailed by the parties' briefs and attached material.

ICG is a corporation whose shares are traded publicly on the New York Stock Exchange ("NYSE"). It is organized under the laws of Delaware with its principal executive offices in Scott Depot, West Virginia. Arch is a Delaware corporation with its principal executive offices in St. Louis, Missouri, while Atlas is a Colorado corporation with its executive offices located in Braintree, Massachusetts. The individual defendants include officers and directors of ICG, Atlas, and Arch.

On February 4, 2011, John W. Eaves, the President and Chief Operating Officer of Arch, received a call from Bennett Hatfield, the Chief Executive Officer ("CEO") of ICG, to discuss a potential acquisition in an asset-swap transaction between the two companies. Mr. Hatfield stated that he would discuss this possibility with the ICG Board of Directors (the "Board") at its regularly scheduled meeting on February 23, 2011.

In light of his discussions with Arch executives, Mr. Hatfield and other ICG representatives independently contacted the representatives of various companies to explore other potential acquisition options. Mr. Hatfield thereafter discussed with the Board the details of Arch's proposal,

and updated it on the status of the Company's discussions with other entities interested in a potential combination transaction. The Board instructed management to continue exploratory discussions with all of the parties. ICG engaged UBS Securities, LLC ("UBS") to assist in the search process.

The process that followed included additional interactions between ICG's management and the management of Arch and other entities with an interest in initiating a combination transaction with ICG. After further meetings, on March 28, 2011, Arch submitted to ICG a non-binding indication of interest to acquire all of ICG's outstanding common stock at a price of $12.25 per share, to be paid 50% in cash and 50% in Arch's common stock. Arch engaged Morgan Stanley to assist in the potential due diligence process.

On March 30, 2011, Steven Leer, Arch's CEO, contacted Wilbur Ross, the Chairman of the Board, to discuss the non-binding indication of interest that Arch had transmitted. Mr. Ross indicated that the Board would soon review the merits of the entire proposal. At a meeting on March 31, 2011, Mr. Hatfield updated the Board on the status of the Company's discussions with Arch, and the other entities interested in acquiring ICG. They reviewed the potential risks and benefits of each transaction. At the meeting, UBS presented background information and financial analysis on each proposal. ICG's counsel, Jones Day, further advised the Board on its fiduciary duties throughout the sale process. The Board concluded that each sitting proposal was inadequate in terms of the price offers for ICG's shares. It thus instructed UBS to continue discussions with potential suitors, and it created a committee to assist and advise management with the details of the process.

On April 1, 2011, pursuant to the instructions given by the Board, Mr. Hatfield informed Mr. Eaves that the Board had found Arch's previous offer price of $12.25 per share deficient, and that Arch would need to improve its position in order for negotiations to continue. After a series of joint

due diligence sessions, however, Arch submitted to ICG a second revised non-binding indication of interest to acquire all of ICG's common stock at a price of $13.25 to $14.00 per share in cash. ICG provided a draft merger agreement to Arch and its outside counsel at Simpson, Thacher & Bartlett, LLP on April 20, 2011.  Arch's offer was posted to the other interested parties, and they were encouraged to provide a markup as "soon as possible."  *See* Int'l Coal Group, Inc., Solicitation/Recommendation Statement 11 (May 16, 2011) (Schedule 14D-9). Other offers were submitted.  However, on April 28, 2011, Arch relayed an enhanced proposal reflecting an interest in acquiring all of ICG's common shares at an all-cash price of $13.90 per share by means of a tender offer not subject to any financing conditions.  The proposal indicated that Arch had completed due diligence and was prepared to immediately announce a transaction.  Arch also submitted a draft merger agreement including a termination fee of 3.75% of ICG's equity value.  In response, the Board allegedly continued further investigation into this and other potential options.

On May 1, 2011, Mr. Eaves called Mr. Hatfield to inform him that Arch was prepared to again increase its proposed price to $14.60 per share.  He also stated that this was Arch's best possible and final offer, and that it would expire at midnight if not accepted by the Board.  The Board convened on the same evening, and concluded that Arch's offer was superior to the others that had been presented due in part to its strong financing commitment.  Consequently, the Board directed UBS to call Arch and confirm whether its latest offer was its "best and final proposal."  *Id.* Upon further discussions with UBS representatives, Arch confirmed that the offer was in fact its best proposal.  It did, however, agree to lower the termination fee to 3.4% of ICG's equity value—down from the previously proposed rate of 3.75%.  Later that evening, the Board unanimously approved the tender offer, and further concluded that Arch's proposed merger agreement was fair and in the

best interests of ICG's shareholders. The agreements were thereafter executed by all parties at midnight on May 2, 2011.

On the morning of May 2, prior to the opening of trading on the NYSE, ICG announced that it had entered into an agreement with Arch under which the latter agreed to acquire ICG in an "all-cash" transaction for approximately $3.4 billion. The transaction is structured as a tender offer to be followed by a back-end merger. Under the terms of the transaction, Arch intends to tender $14.60 per share in cash for all of the outstanding shares of ICG.[1] The tender offer is scheduled to close on June 14, 2011. On May 16, 2011, ICG and Arch filed the applicable disclosure documents related to this transaction with the Securities and Exchange Commission ("SEC").

On May 12, 2011, an ICG stockholder filed a putative class action in this Court, seeking to enjoin the transaction. On May 9, 2011, two nearly identical suits challenging the tender offer and merger were filed in the Circuit Court for Putnam County, West Virginia (the *Walker* and *Huerta* litigations),[2] and one in the Delaware Court of Chancery (the *Kirby* litigation).[3] In addition, on May 11, 2011, two similar actions were filed both in Delaware (the *Kramer* litigation)[4] and in the Circuit Court of Kanawha County, West Virginia (the *Goe* litigation).[5] Since the filing of these complaints,

---

[1] As the defendants note, this represents a 32.4% premium considering the closing price of ICG's common stock as of April 29, 2011, the last trading day prior to the announcement of the transaction.

[2] *Walker v. ICG, Inc.*, No. 11-C-123 (W. Va. Cir. Ct. 2011); *Huerta v. ICG, Inc.*, No. 11-C-124 (W. Va. Cir. Ct. 2011).

[3] *Kirby v. ICG, Inc.*, No. 6464-VCP (Del. Ch. 2011).

[4] *Kramer v. ICG, Inc.*, No. 6470-VCP (Del. Ch. 2011).

[5] *Goe v. ICG, Inc.*, No. 11-C-766 (W. Va. Cir. Ct. 2011).

moreover, an additional two actions have been filed.[6] The Delaware and West Virginia state actions have been consolidated in their respective courts.

The plaintiffs in all of these actions allege that the proposed transaction between ICG and Arch is grossly unfair to ICG's common shareholders for a variety of reasons. First, they complain that the consideration offered by Arch is inadequate because the intrinsic value of the stock is substantially higher given ICG's prospects for future growth and earnings. To that end, they allege that ICG has performed extremely well in recent years due to spikes in the price of metallurgical and thermal coal, two products in which it specializes, and its current plan to open a new mine. By all general accounts, ICG has performed exceptionally well in the current economic environment.

The plaintiffs also suggest that the proposed transaction fails to compensate ICG shareholders for the tremendous benefit Arch will receive in the event it acquires ICG. Namely, it is alleged that the acquisition would make Arch the second largest U.S. "coking-coal" producer with an "unparalleled operational diversification in every major U.S. supply basin and the No. 1 or No. 2 position in each of its three core operating regions." Pls.' Compl. 13-14, No. 1.[7]

The various complaints also highlight preclusive deal protection devices that appear to be attached to the transaction. The plaintiffs allege, for example, that as part of the merger agreement, Arch will receive a "top-up option." This option essentially allows Arch to purchase at the deal price upon successful completion of the tender offer the remaining shares sufficient to overcome the 90% threshold to effectuate a short-form merger. Upon arriving at the 90% threshold, in Delaware,

---

[6] *See Isakov v. ICG, Inc.*, No. 6505 (Del. Ch. 2011); *Eyster v. ICG, Inc.*, No. 11-C-131 (W. Va. Cir. Ct. 2011).

[7] *See Arch to Acquire International Coal for $3.4 Billion for Steelmaking Assets*, Bloomberg News (May 2, 2011).

the parent-buyer may complete a squeeze-out of the remaining shareholders.[8] However, while top-up options are not necessarily uncommon, the plaintiffs contend that Arch's option does not require a specific threshold prior to its exercise. Furthermore, according to the plaintiffs, Arch may unilaterally waive minimum conditions attached to the top-up option, making consummation of the transaction effectively inevitable.

Other preclusive devices the plaintiffs point out include the ability of Arch to receive three-day's notice of any other offers in order to amend the terms of the agreement so that it can make a counter-offer. Pursuant to such notice, Arch allegedly is to be given the *entire* details of any other unsolicited offer. These devices, in the plaintiffs' opinion, operate in a way that illegally restrains ICG's ability to solicit or engage in negotiations with any other prospective third-party buyer.

Finally, the plaintiffs in the instant action also contend that the defendants have violated their state-law fiduciary duties as well as §§ 14(d)(4) and (e) of the Securities and Exchange Act (the "Exchange Act"), 15 U.S.C. § 78n(d)(4), (e), and the rules promulgated thereunder, by misrepresenting or omitting material information concerning Arch's proposed tender offer in their required SEC disclosure materials.

## II. Discussion

The defendants move to stay this action so that the parties may combine all of the aforementioned putative class claims in the Delaware Court of Chancery. In essence, due to the substantial similarity between all of the concurrently-pending putative class actions, the defendants contend that considerable problems would arise if each court involved refuses to consolidate the

---

[8] Delaware's short-form merger statute permits majority stockholders owning at least 90% of a company's shares to eliminate the minority stockholders without traditional fairness procedures. *See* 8 Del. C. § 253.

cases.

It is of course true that West Virginia state courts retain the discretionary ability to consolidate or stay civil actions for efficiency purposes. *See, e.g.*, *Hanlon v. Joy Mfg. Co.*, 418 S.E.2d 594, 597 (W. Va. 1992) ("[W]e have traditionally allowed trial courts wide discretionary power in deciding whether to consolidate cases."). In federal court, however, "the power to stay proceedings is incidental to the power inherent . . . to control the disposition of the causes on [the] docket with economy of time and effort for [the court], for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This determination requires the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. In that respect, "courts [must] look to factors such as the length of the requested stay, the hardship that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." *Mut. Funds Inv. Litig. v. Putnam Inv. Mgmt. LLC*, MDL 1586 No. 04-md-15863, 2011 U.S. Dist. LEXIS 42845, at *7 (D. Md. April 20, 2011) (citations omitted).

A federal court may abstain from exercising jurisdiction in favor of concurrent and parallel state proceedings where doing so would serve the interests of "wise judicial administration, giving regard to the conservation of judicial resources." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) ("Colorado River"). However, in all cases, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813. Absent exceptional circumstances, the "district court has a duty to adjudicate a controversy properly before it." *E. Assoc. Coal Corp. v. Munson*, 266 F. Supp. 2d 479, 484 (N.D. W. Va. 2003) ("Munson") (citing *New Beckley Mining Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991)); *see also Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16, 23 (considering *Colorado River* in finding that abstention was not warranted where a party sought a motion to compel arbitration because no "exceptional circumstances" existed). The court, in determining whether exceptional circumstances exist sufficient to warrant abstention from exercising jurisdiction in favor of parallel state court proceedings, should consider the six factors delineated in *Colorado River* and subsequent Supreme Court cases. *See Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 341 (4th Cir. 2002) (citations omitted). Those factors are: "(1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking jurisdiction." *See Galloway & Assocs., PLLC v. Fredeking & Fredeking Law Offices, LC*, No. 3:10-0830, 2010 U.S. Dist. LEXIS 108175, at *14-15 (S.D. W. Va. Oct. 8, 2010) (internal quotation marks and citations omitted).

The defendants, while conceding that they would accept the continuation of this action in any one of the courts in which the plaintiffs proceed, contend that the Delaware Court of Chancery is best positioned to resolve the issues presented in this dispute. As a result, they argue that this matter should be stayed for purposes of permitting all class action claims to be consolidated in Delaware.

    **A.**    **The instant proceedings are parallel with the Delaware action**

As a threshold matter, the Court must determine whether any concurrently pending state-court actions are sufficiently "parallel" to warrant a stay. *See In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008). A concurrently-pending action is

parallel where it involves "'substantially the same parties . . . contemporaneously litigating the same issues in different forums.'" *Id.* (quoting *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-cv-1849, 2006 U.S. Dist. LEXIS 80195, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)).

The merger-related fiduciary duty class action claims are sufficiently similar in each forum. All of these claims essentially charge the ICG Board and its management with failing to obtain a fair price for ICG's common stock, self-dealing, and otherwise violating their fiduciary duties of good faith and fair disclosure to ICG's shareholders. They also state that the defendants made false or misleading disclosures about the instant transaction in official SEC filings, and that Arch and Atlas aided and abetted in the fiduciary duty breaches. Each complaint, moreover, seeks immediate injunctive relief halting the pending transaction. These facts more than adequately establish the "parallelism" requirement with respect to the claims asserting state-law fiduciary duty violations raised in this Court and in the Court of Chancery.

### B. The *Colorado River* factors counsel in favor of a partial stay

On balance, the *Colorado River* factors warrant a partial stay of the fiduciary duty claims brought under Delaware law. The first factor is not at issue as no court has assumed jurisdiction over any property. With regard to the second factor, there does not appear to be a clear tactical advantage for the defendants if the Court were to stay the proceedings so that the plaintiffs may consolidate their lawsuits in Delaware. Each plaintiff purports to bring claims on behalf of the class defined as ICG's common shareholders. Inasmuch as there are currently millions of common shares outstanding, the burden of defending a suit in a different court would not materially alter the shareholders' tactical position in proceeding with this litigation.

On the other hand, the defendants would suffer a substantial burden if their motion is denied.

Numerous different courts now have control over multiple similar putative class actions seeking to stop a $3.4 billion transaction. After reviewing the complaints in each case, it is clear that virtually the same allegations are charged against the same defendants. Furthermore, as already discussed, the same relief is sought in every action—an injunction against the proposed acquisition and compensatory damages. Requiring the defendants to defend these lawsuits separately could inject a great deal of uncertainty into the deal's already-expedited time line. The defendants could face duplicative discovery requests and markedly different general litigation schedules in each court.

The third, fourth, fifth, and sixth factors of the *Colorado River* test similarly support the grant of a partial stay. First, perhaps most problematic, insofar as each action requests injunctive relief, there runs a "risk of conflicting results in enjoining a multi-billion dollar merger" that could potentially impact "innumerable shareholders." *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1172. There is, as discussed, a need to proceed expeditiously. Given the significant complexity of the issues presented, permitting multiple courts to decide the same issues on whether the defendants breached their fiduciary duties in approving the Arch deal is judicial overkill, and harmful to all parties in this action. It would be unjust and unnecessary to impose potentially incompatible standards of conduct on the defendants.

Furthermore, all of the plaintiffs' class action merger-related claims allege breaches of the defendants' fiduciary duties under state law. Because ICG is a Delaware corporation, these claims are governed by Delaware law under the "internal affairs" doctrine. *See, e.g.*, *In re Citigroup, Inc. S'holder Derivative Litig.*, 964 A.2d 106, 118 (Del. Ch. 2009). The Delaware Court of Chancery "'has a well-recognized expertise in the field of [its] corporation law.'" *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1173 (quoting *Strougo v. BEA Assocs.*, No. 98 Civ. 3725,

2000 U.S. Dist. LEXIS 346, at *13 (S.D.N.Y. Jan. 19, 2000)). The parties would thus benefit from the expertise of the Court of Chancery in determining whether the defendants failed to maximize the value of ICG's common stock, or otherwise breached their fiduciary duties to ICG's shareholders in the disclosure of this deal.

Additionally, while the order in which jurisdiction was obtained is not necessarily dispositive, the Court notes that the Court of Chancery in the *Kirby* litigation obtained jurisdiction over the class action merger-related claims before this Court. That case has been placed on an expedited discovery schedule.[9] As the defendants submit, the parties there have already begun depositions. Wilbur Ross was deposed on May 20, 2011, and various UBS representatives will be deposed on the date this Opinion is entered. The plaintiffs wish to conduct the very same depositions in their request for "expedited" discovery in this Court. Yet, as the defendants point out, the plaintiffs have been invited to participate in the discovery in Delaware by way of a letter dated May 17, 2011. Further, the Delaware plaintiffs have filed a motion for prompt treatment of their claims as well as a motion and proposed order seeking to consolidate every class claim so as to avoid inefficiently interfering with the deal's proposed closing date. *See* Defs.' Mot. Proceed in One Jurisdiction, Dismiss or Stay Litig., Ex. G, at 135-36, No. 5-1. The Court of Chancery has also scheduled a hearing on the plaintiffs' motion for a preliminary injunction on every issue for June 9, 2011. *Id.* Clearly, then, the Delaware proceedings have advanced at a considerably quicker pace than the proceedings in this Court.

Finally, the Court finds unpersuasive the plaintiffs' argument that a stay is categorically

---

[9] Although ICG maintains its corporate headquarters in West Virginia, any material documents located in its home office will be easily disclosed through the discovery process in Delaware.

impermissible where a plaintiff has asserted both state and federal causes of action. Other courts have indeed found it appropriate to grant a partial stay under *Colorado River* in similar circumstances. *See, e.g.*, *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d at 1172-73 (applying *Colorado River* abstention in granting a partial stay of litigation in favor of a parallel Delaware action). Indeed, the third and sixth factors support a partial stay despite the fact that the plaintiffs in the current action have added claims for federal securities disclosure violations in connection with ICG's filing of a Schedule 14D-9. The grant of a partial stay will efficiently sever the issues to be determined by this Court and the Court of Chancery so that no court renders duplicative holdings.

It is true that other district courts have recently found abstention on federal claims brought under the Exchange Act appropriate where the actions are factually indistinguishable from claims brought in Delaware state court. *See, e.g.*, *McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 U.S. Dist. LEXIS 41639, at *13-14 (N.D. Cal. Apr. 13, 2011) (staying federal disclosure claims brought under §§ 14(d)(4) and 14(e) of the Exchange Act in a putative class action shareholder suit in favor of parallel Delaware proceedings "'because the relationship and nature of the exclusively federal claim and the state law claim are so decisively similar.'" (quoting *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96-C-2816, 1996 U.S. Dist. LEXIS 12481, at *18 (N.D. Ill. Aug. 26, 1996)). Nonetheless, because of significant authority suggesting that a district court may not grant a stay of claims arising under its exclusive jurisdiction, *see, e.g.*, *Krieger v. Atheros Communs., Inc.*, No. 11-CV-00640-LHK, 2011 U.S. Dist. LEXIS 28348, at *14-15 (N.D. Cal. March 4, 2011) (chronicling the extensive authority in the Second, Fifth and Ninth Circuits concluding that the district court may not stay Exchange Act claims arising under its exclusive jurisdiction); *SST Global*

*Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 463-64 (S.D.N.Y. 2003) (finding abstention inappropriate where a pending Delaware action would have resolved the core factual issues of claims brought under the Exchange Act), the Court does not grant a stay of the plaintiffs' Exchange Act claims.

But the fact that the Court cannot stay the Exchange Act claims does not imply that deference to the Delaware proceedings will not provide substantial benefits to all of the parties inasmuch at it will efficiently hasten the resolution of this entire litigation. While the "federal scheme of disclosure is not replicated in Delaware law," *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 141 n.18 (Del. 1997), the essential inquiry in analyzing a fiduciary disclosure claim under Delaware law is whether any alleged omission is "material" as that term is defined by federal law. *See In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 509 (Del. Ch. 2010) (citing *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Here, the Delaware state-law disclosure claims are virtually identical to the claims brought under the Exchange Act. Moreover, the majority of the plaintiffs' claims concern allegations of fiduciary duty breaches related to ICG's failure to maximize the price of its shares in undertaking the proposed transaction with Arch. The plaintiffs' alleged disclosure violations concern omitted material that could show evidence of fiduciary breaches. In other words, the omitted material would essentially illuminate the Board's failure to adequately investigate other viable options and its alleged self-dealing. The Court of Chancery will very shortly decide both whether claims based on these core allegations and the plaintiffs' state- law disclosure violations are entitled to preliminary injunctive relief. Thus, although it cannot adjudicate the Exchange Act claims, it may issue an injunction against the merger—the core relief the plaintiffs seek—on the same operative facts. "Whether an injunction is granted or denied by this Court or by

the Delaware Court is unimportant—the effect of preventing or allowing the proposed acquisition to proceed is the same no matter which court takes action." *McCreary*, 2011 U.S. Dist. LEXIS 41639, at *14.

On balance, therefore, the Court believes that Delaware is an appropriate forum in which the class-action fiduciary claims may be consolidated, and that consolidation would further the interests of prompt judicial resolution of the entire litigation. Therefore, the Court **GRANTS** the defendants' motion and **STAYS** this action with respect to the plaintiffs' claims alleging breaches of Delaware law. The remaining claims brought under the Exchange Act will remain in this Court for resolution.

### C.  Remaining Motions

The Court conducted a telephone conference call with the parties on May 25, 2011 during which the plaintiffs' Motion for Expedited Proceedings and Discovery [Doc. 10] and the plaintiffs' Motion for Expedited Hearing [Doc. 13] were discussed. Pursuant to the parties' agreement, the Court **DENIES** those motions as moot and **WITHOUT PREJUDICE**.

Also pending is the plaintiffs' Motion for a Preliminary Injunction. [Doc. 9] Consistent with the reasoning set forth in this Opinion, while the Court will not stay the claims brought under the Exchange Act pending the final resolution of the Delaware proceedings, it will hold the plaintiffs' Motion for Preliminary Injunction in abeyance until otherwise directed by the Court, in order to give the parties in the Delaware action an opportunity to more fully develop the facts pertinent to the immediate resolution of their state-law claims by the Court of Chancery. Those claims, as alleged, are sufficiently similar to warrant temporary deference to the Court of Chancery's determinations. The plaintiffs may, however, renew their request for expedited consideration in the event an adequate result is not obtained before the deal's closing date.

## III.     Conclusion

For these reasons, the Court **GRANTS** in part and **DENIES** in part the defendants' Motion to Proceed in One Jurisdiction, Dismiss or Stay Litigation in the Other Jurisdiction, and Organize Counsel for the Putative Class [Doc. 5]. The Court **STAYS** this action with respect to the plaintiffs' claims alleging breaches of Delaware law. Further, the Court **DENIES** the plaintiffs' Motion for Expedited Proceedings and Discovery [Doc. 10] and the plaintiffs' Motion for Expedited Hearing [Doc. 13] as moot and **WITHOUT PREJUDICE**. Finally, the Court **HOLDS IN ABEYANCE** the plaintiffs' Motion for a Preliminary Injunction. [Doc. 9]

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:     May 27, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE